**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **TERRY VANOVER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No.: 5:23-cv-00802** |
| | * | **Honorable Frank W. Volk** |
| **STATE FARM MUTUAL** | * | |
| **AUTOMOBILE INSURANCE** | * | |
| **COMPANY and** | * | |
| **BODYSHOPBIDS, INC.,** | * | |
| **d/b/a SNAPSHEET, INC.,** | * | |
| | * | |
| **Defendants.** | * | |

---

**MEMORANDUM OF LAW IN OPPOSITION TO BODYSHOPBIDS,
INC., D/B/A SNAPSHEET, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant Bodyshopbids, Inc. d/b/a Snapsheet, Inc. ("Snapsheet") as a general business practice, contracts with defendant State Farm Mutual Automobile Insurance Company ("State Farm") to generate low-ball auto property estimates. The estimates are based exclusively on photographs and are made without Snapsheet or State Farm conducting any investigation or physical inspection of the insured's vehicle. To make matters worse, Snapsheet trains its estimators to not "mention poor photo quality" in the estimates it provides to State Farm and its policyholders. State Farm and Shapsheet's business deal was designed to reduce State Farm's indemnity by fifteen to twenty percent (15%-20%). These facts are documented in Snapsheet and State Farm's own internal documents and they are not in dispute.

In this case, the victim of Snapsheet and State Farm's fraudulent scheme is Terry Vanover ("Terry"). Terry is physically disabled. She is paralyzed on the left side of her body as a result of a stroke. At the time of her insurance claim, she was battling cancer and receiving chemotherapy. During the course of that therapy, she fell and broke her hip. When her Recreational Vehicle

("RV") was damaged, she asked her insurance company to investigate and pay for the loss. In response to her claim, State Farm outsourced the estimate to its third-party administrator defendant Snapsheet who generated a facially absurd $185.50 estimate and refused to perform an in-person inspection. When Terry Vanover needed her help the most, Snapsheet, betrayed her trust and attempted to take advantage of her. This case is the story about how Terry Vanover is fighting back.

**STATEMENT OF FACTS**

1.      On October 1, 2022, Plaintiff's companion, Donald Lambert, was towing their 2014 Keystone Mountaineer RV, VIN # 4YDF34526E4730009 (the "RV") home from their annual vacation at Stonewall Resort. The RV was insured through State Farm.

2.      On the way home, the RV was damaged by a deformity in the road.

3.      After investigating over the course of the next week, Terry and Donald believed that the damage was to the chassis and tongue assembly of the RV and that the damage was so serious that the RV could not support its own weight.

4.      On or about October 13, 2022, Terry contacted State Farm and made a claim under her State Farm policy.   No information regarding the type of damage sustained by the RV was documented in State Farm's claim file regarding the initial notice of loss. State Farm did not do any real investigation concerning the scope of the loss or the extent of the plaintiff's damages at this time and only described the damage as "other" in the claim file. **Exhibit 1,** STATE FARM_TERRY VANOVER 000058

5.      Thereafter, State Farm refused to inspect the vehicle or otherwise investigate the loss.

6.      To the contrary, State Farm demanded that the plaintiff investigate the loss, take photographs of the damage and submit them to State Farm.  See e.g., **Exhibit 2,** STATE FARM_TERRY VANOVER 000050-000051.

7.      Plaintiff requested a State Farm adjuster come look at the vehicle, shared her safety concerns about towing the vehicle with "Amy" from State Farm's appraisal team and made it abundantly clear that photos were insufficient to estimate damages because you cannot see what happens to the vehicle in photos.  **Exhibit 3[1],** SNAPSHEET-000074. Plaintiff's concerns were ignored.

8.      Snapsheet took over estimating the loss on October 21, 2022.  **Exhibit 4,** SNAPSHEET-000089.

9.      Terry initially disclosed she was having health problems to Snapsheet[2] on October 27, 2022. *Id*.

10.     Soon thereafter, on November 17, 2022, Terry disclosed her cancer diagnosis and indicated that after Thanksgiving she would send photos.  **Exhibit 2,** STATE FARM_TERRY VANOVER 000050. In response to the disclosure, Snapsheet and State Farm closed Terry's insurance claim. *Id*.

11.     The claim was closed a total of fifteen (15) times. At no point in time did anyone notify Terry that Snapsheet and State Farm had closed her claim.  **Exhibit 5**, Deposition of Justin Platt at p. 277:12-16.

12.     As promised, Terry secured photographs of the vehicle after Thanksgiving.[3]

---

[1] This Exhibit contains an audio file that was marked on a flashdrive and taken to the Clerk to be docketed.

[2] Snapsheet identified itself as State Farm's "appraisal team," withheld its true identity from State Farm's policyholder.

[3] The photographs showed the bowing of the interior panel due to pressure caused by the tongue assembly being incapable of withstanding the weight of the RV.  This exact mechanical issue that was described by the plaintiff to State Farm and precisely the reason that the plaintiff requested an in person inspection of her vehicle.

13.     In response to the photographs, Snapsheet generated a $185.50 estimate in December of 2022.  **Exhibit 6**.   STATE FARM_TERRY VANOVER 000694-000696 State Farm and its "appraisal team" [Snapsheet] claimed Plaintiff's RV could be made whole with $15.00 in nails and two hours of labor.

14.     The estimate was shared with the plaintiff in January of 2023 when State Farm denied the plaintiff's claim indicating that "[t]he estimated cost of repairs is $185.50, which is under your $250 deductible. **Exhibit 7,** STATE FARM_TERRY VANOVER 000328- 000329 (denial letter).

15.      After the denial, the plaintiff reached out to Snapsheet and specifically explained why the photo based estimate was improper because damage to the internal component parts of the RV made it necessary to disassemble the RV to determine the extent of damage. **Exhibit 8[4],** SNAPSHEET-000073.   Terry also explained that it was unsafe to move the vehicle. *Id*. Snapsheet ignored the plaintiff's valid concerns.

16.     Plaintiff hired Bailey Javins & Carter, LC ("BJC").  On May 9, 2023, BJC attorney David A. Bosak contacted State Farm in reference to the loss.   **Exhibit 9,** STATE FARM_TERRY VANOVER 000589.  State Farm directed attorney Bosak to deal directly with Snapsheet.

17.     Attorney Bosak provided additional photos of the loss to State Farm and Snapsheet on July 11, 2023.  **Exhibit 10,** STATE FARM_TERRY VANOVER 000367 and **Exhibit 11,** STATE FARM_TERRY VANOVER 000378-000388. The July 11, 2023 letter documents with evidence damage to the tongue assembly and that the structural integrity of the RV is compromised by the damage.  *Id*.

18.     Despite this additional evidence Snapsheet refused to write a supplemental estimate.

---

[4] This Exhibit contains an audio file that was marked on a flashdrive and taken to the Clerk to be docketed.

19.    Snapsheet demanded that the RV be towed to a shop to participate in the Supplemental Estimate process.  **Exhibit 12[5]**, SNAPSHEET-000076.

20.    No supplemental estimate was generated by State Farm who did not employ adjusters who were able to write RV estimates.  **Exhibit 13,** Deposition of Luanne Kelly at 142:8-10 ("State Farm does not have estimators for RVs. That's why we partner with Snapsheet.")

21.    Ultimately, the plaintiff paid Bill Monaghan to come to her home, inspect the vehicle and generate an estimate.  **Exhibit 14,** STATE FARM_TERRY VANOVER 000362-000363 (Bam Sales, LLC d/b/a Jenning RV & MH Access.).  A copy of the estimate was directed to State Farm by attorney Bosak on August 24, 2023. *Id*.

22.    State Farm, who had outsourced the investigation and valuation of the claim to Snapsheet, directed the estimate to Snapsheet.  **Exhibit 15,** SNAPSHEET-000085.

23.    On September 8, 2023, Snapsheet's estimator, Jessica Younger, sent it back to State Farm and directed State Farm to "reach out to the shop for any questions and for payment on the bill." **Exhibit 16,** SNAPSHEET-000086.

24.    Thereafter, on September 15, 2023, 11 ½ months after the loss, State Farm suggested that it finally intended to inspect the vehicle "to secure the photos that are needed for the proper evaluation of the estimate that was submitted for the damages being claimed." **Exhibit 17,** STATE FARM_TERRY VANOVER 000311.

25.    On September 19, 2023, Snapsheet generated an estimate based upon Mr. Monaghan's estimate.  **Exhibit 18,** SNAPSHEET-000084.

26.    The second Snapsheet estimate does not include the cost of towing the vehicle.  **Exhibit 19,** SNAPSHEET000153-000158. However, Snapsheet's claim notes document $21,000.00 in

---

[5] This Exhibit contains an audio file that was marked on a flashdrive and taken to the Clerk to be docketed.

potential hidden damage and a $20,000 bill to tow the RV.  **Exhibit 18,** SNAPSHEET-000084. The Snapsheet claim note indicates $30,749.12 is the potential cost to repair. *Id.*

27.    Snapsheet and State Farm have agreed to withhold all information about potential "latent" or "hidden damages" from State Farm's policyholder as the estimate generated by Snapsheet does not include any information about potential "latent damage" not included in the estimate and/or not visible in the photographs. **Exhibit 20,** Deposition of Sean Gergets at p. 89, line 10-24.  In this instance, the "latent damage" (or hidden damage) not included in Snapsheet's second estimate was a $20,000 tow bill.

28.    Finally, on September 25, 2023, State Farm Manager George LeBow approved Claim Supervisor Joyce Thomas handling the claim as a total loss: "[p]er the shop estimate the tow hitch has separated from the frame and would require complete disassembly of the front of the trailer to access and repair.  The estimate on file does not account for this."

29.    The total loss valuation was communicated to the plaintiff by letter dated September 25, 2023.  **Exhibit 21,** STATE FARM_TERRY VANOVER 000294-000295.

30.    On September 28, 2023 Snapsheet concurred that the State Farm insured's vehicle was a total loss.  **Exhibit 22,** SNAPSHEET-000083.

31.    The plaintiff filed the instant lawsuit alleging breach of contract, common law and statutory bad faith *inter alia* on December 20, 2023.[6]

32.    On February 12, 2024, the plaintiff outlined terms for plaintiff's acceptance of State Farm's total loss valuation under the express condition that acceptance of the policy proceeds does not resolve or settle any claims against State Farm that are the subject matter of the instant Civil Action. **Exhibit 23**.

---

[6] The plaintiff's Complaint was amended on August 16, 2024.

33.     Thereafter, it was discovered that what happened to Terry Vanover is merely one example of a widespread, well-planned scheme to cheat and steal that affects thousands of claimants and has resulted in a hundred million dollars in ill-gotten gain.

34.     We now know approximate estimates of the average theft suffered by these policyholders through Defendants' disclosures in this case.  Snapsheet produced information touting that their system results in "15-20% Indemnity Savings" on average.  See **Exhibit 24,** Snapsheet Executive Summary at SNAPSHEET001642.

35.     This is particularly troubling because the deposition of Sean Gergets Snapsheet's 30(b)(6) corporate designee confirms: (1) Snapsheet does not have access to State Farm's historical claim data; and (2) there is no evidence that State Farm, or anyone for that matter, was overpaying claims by 15-20%.  See **Exhibit 20,** Deposition of Sean Gergets, Snapsheet's 30(b)(6) witness at p. 202-206.

Further evidence of Snapsheet and State Farm's systematic efforts to cheat policyholders is revealed by Snapsheet's internal training documents which instruct Snapsheet estimators to **not** mention poor photo quality when they write estimates.  **Exhibit 25,** SNAPSHEET000873.

## LAW AND ARGUMENT

**A.  Snapsheet is subject to liability for statutory and common law bad faith.**

West Virginia law imposes civil liability on a party who aids and abets tortious conduct:

> [F]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.

*Taylor v. Robert W. Ackerman, P.C.*, No. 14–0961, 2015 WL 3875763, at *6 (W. Va. 2015) (memorandum decision) (quoting Syl. Pt. 5, *Courtney v. Courtney*, 413 S.E.2d 418 (1991)); see also *Price v. Halstead*, 355 S.E.2d 380, 386–67 (W. Va. 1987).

Both statutory and common law bad faith claims are tortious in nature.[7] See *State ex rel. Owners Ins. Co. v. McGraw*, 760 S.E.2d 590, 599 (W. Va. 2014) (Davis, J., concurring) (collecting cases) ("Our cases have made clear that statutory and common law bad faith claims are tort actions."); *M & S Partners v. Scottsdale Ins. Co.*, No. 2:04–1221, 2006 WL 995136, at *2 (S.D.W.Va. Apr. 11, 2006) (same).  Therefore, we request that the Court find that the Defendant is subject to liability under the *Hayseeds* doctrine and under the Unfair Trade Practices Act.

Plaintiff incorporates her arguments in her *Memorandum of Law in Opposition to State Farm's Motion for Summary Judgment* as if restated herein verbatim.

**B.  A triable question of fact exists regarding whether Snapsheet has a general business practice of unfair claim settlement practices in violation of W.Va. Code §33-11-4(9).**

West Virginia's Unfair Trade Practices Act ("UTPA") prohibits persons engaged in the business of insurance from engaging in a "general business practice" of unfair claim settlement practices. The Supreme Court of Appeals "has held that '[ ]an implied private cause of action may exist for violation by an insurance company of the unfair settlement practice provisions'" of W. Va. Code § 33–11–4(9). *Taylor v. Nationwide Mut. Ins. Co.*, 589 S.E.2d 55, 59–60 (W. Va. 2003) (quoting Syl. Pt. 2, *Jenkins v. J.C. Penney Cas. Ins. Co.*, 280 S.E.2d 252 (1981), overruled on other grounds by *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 451 S.E.2d 721 (1994)).

---

[7]A first party common law bad faith claim is a claim made pursuant to *Hayseeds, Inc. v. State Farm Fire & Casualty*, wherein an insured may recover damages against an insurer for substantially prevailing in a first party insurance claim (a breach of contract action).  353 S.E.2d 73 (W.Va. 1986). See e.g., Syl. Pt. 5, *Jordache Enterprises, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, Pa., 204 W. Va. 465, 468, 513 S.E.2d 692, 695 (1998)("In order for a policyholder to bring a common law bad faith claim against his insurer, according to *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986) and its progeny, the policyholder must first substantially prevail against his insurer on the underlying contract action."); *Dow v. Liberty Ins. Co.*, 2022 WL 17421055, at *3 (S.D.W. Va. Dec. 1, 2022) ("While a Hayseeds common law bad faith claim requires the plaintiff to have substantially prevailed in the underlying insurance dispute, a *Jenkins* statutory-based claim is not dependent upon a positive disposition of the underlying insurance claim.").

If a party falls within the definition of a "person" under the UTPA and is "involved in the business of insurance," it may be held liable for violating the UTPA's good-faith requirement. *Id*. at 60–61 & n.17.W. Va. Code § 33–11–4(9).

### Business of Insurance

Defendant Snapsheet alleges that it is not "engaged in the business of insurance." Because the parties do not dispute that State Farm is engaged in the business of insurance, Snapsheet was engaged in the business of insurance if it acted as State Farm's agent. *Shaffer v. Nat'l Health Ins. Co.*, No. 1:17CV195, 2018 WL 1995525, at *5 (N.D.W. Va. Apr. 27, 2018)("[A]n agent in the restricted sense is a representative of his principal in business or contractual relations with third persons," or one who "undertakes some business or to manage some affair for another by authority of or on account of the latter and to render an account of it." *Wetzel v. Employers Serv. Corp. of West Virginia*, 656 S.E.2d 55, 60 (W. Va. 2007) (internal citation omitted)").

Snapsheet is engaged in the business of insurance on behalf of is principal – State Farm. *Shaffer v. Nat'l Health Ins. Co.*, No. 1:17CV195, 2018 WL 1995525, at *5 (N.D.W. Va. Apr. 27, 2018). There appears to be little reason to doubt that the West Virginia Supreme Court would extend the rule of the *Taylor* case to an insurance tech company who appraises losses for an insurance company. [Doc. 57 at ¶72-78] See e.g., *Shaffer v. Nat'l Health Ins. Co.*, No. 1:17CV195, 2018 WL 1995525, at *4 (N.D.W. Va. Apr. 27, 2018)( citing, *Taylor v. Robert W. Ackerman, P.C.*, No. 14–0961, 2015 WL 3875763, at *6 (W. Va. 2015)); *Pinnoak Resources, LLC v. Certain Underwriters at Lloyd's, London*, 394 F. Supp. 2d 821, 825 (S.D.W.Va. 2005) (Faber, J.)).

### Snapsheet has a general business practice of unfair claim settlement practices

In order to establish a violation of the UTPA based on the conduct in a single claim,

the evidence should establish that the conduct in question constitutes more than a single violation of W. Va. Code § 33–11–4(9), that the violations arise from

9

> separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

*Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1, 13 (W. Va. 1996). Accordingly, a valid UTPA claim against the defendant based on a single claim requires showing that defendant Snapsheet "(1) violated the UTPA in the handling of the claimant's claim and (2) that the insurer committed violations of the UTPA with such frequency as to indicate a general business practice." *Holloman v. Nationwide Mut. Ins. Co.*, 617 S.E.2d 816, 823 (W. Va. 2005).

The UTPA lists fifteen general business practices that amount to unfair claim settlement practices. W. Va. Code § 33–11–4(9)(a)–(o). Additionally, the Insurance Commissioner has promulgated rules (hereinafter "Insurance Regulations") to "define certain practices in [West Virginia] which constitute unfair ... practices ... and methods of settlements" of insurance claims. W. Va. Code R. § 114–14–1.1(a). [8]

The defendant's conduct demonstrates a pattern of unfair claim settlement practices in violation of W.Va. Code §33-11-4(9) which rise to the level of a general business practice. [9]

---

[8] As a set forth in *Dodrill*, there would need to be multiple, isolated violations in order to establish a general business practice. UTPA claims are generally treated as an overarching claim and the statutory sub-paragraphs treated as individual factors, with multiple violations of one or more factors required to establish a UTPA violation. See Syl. pt. 5, *Barefield v. DPIC Companies Inc.*, 600 S.E.2d 256 (W. Va. 2004) (explaining evidence should establish multiple, separate acts or omissions so that conduct on the whole can give rise to a UTPA claim); *Maher v. Continental Cas. Co.*, 76 F.3d 535 (1996) (holding that where an insurer is alleged to have engaged in more than one listed prohibited practice in a single claim, a general business practice may be established even when the factual basis for each violation may not be within the same isolated scenario). *Prime Copy Plus, Inc. v. Sentinel Ins. Co., Ltd*, No. CV 3:15-14655, 2016 WL 2851568, at *3 (S.D.W. Va. May 13, 2016).

[9] Further, the West Virginia Supreme Court has previously explained that subsections of the UTPA that involve reasonableness determinations are "ordinarily questions of fact for the jury." *Am. Safety Indem. Co. v. Stollings Trucking Co.*, No. CIV A 204-0752, 2007 WL 2220589, at *6 (S.D.W. Va. July 30, 2007)(citing, Syl. pt. 5, *Hicks ex rel. Saus v. Jones*, 217 W.Va. 107, 109, 617 S.E.2d 457, 459 (W.Va. 2005); syl. pt. 3, *Jackson v. State Farm Mut. Auto. Ins. Co.*, 215 W.Va. 634, 637, 600 S.E.2d 346, 349 (W.Va.2004)). In both *Jones* and *Jackson*, the West Virginia Supreme Court reversed the circuit court's ruling as a matter of law that the insurer violated the UTPA and remanded. *Jackson*, 215 W.Va. at 643, 600 S.E.2d at 355; *Jones*, 217 W.Va. at 110, 617 S.E.2d at 460. It explained, "[w]e went on in Syllabus Point 3 of Jackson to conclude that the reasonableness of an insurance company's conduct 'ordinarily

### *§33-11-4(9)(a) - Misrepresenting Pertinent Facts or Insurance Policy Provisions*

Snapsheet violated W.Va. Code §33-11-4(9)(a) by materially misrepresenting to the plaintiff, that a photo-based appraisal was sufficient for properly evaluating structural RV damage despite the insured's express concerns about internal damage that would not be visible in photographs. **Exhibit 3 and 12,** SNAPSHEET-000074; SNAPSHEET-000076. The defendant's fraud is exacerbated by Snapsheet deliberately withholding information about potential "latent damages" from State Farm's policyholders as a general business practice which is an additional material misrepresentation of fact. **Exhibit 20,** Deposition of Sean Gergets at p. 89, line 10-24. Additionally, Snapsheet's internal documents show (a) Snapsheet's process aimed to reduce indemnity[10] by 15–20% without evidence of prior overpayments[11]; and (b) Snapsheet's training documents[12] instruct estimators not to mention poor photo quality.

Additionally, Snapsheet substantially encourages and assists State Farm in materially misrepresenting in its policy language that it would pay for towing to the nearest facility where necessary repairs can be made. *See* ECF 161-1 at p. 23 of 43 Policy at p. 19. All of the aforementioned conduct violates W.Va. Code §33-11-4(9)(a).

### *§33-11-4(9)(b) - Failing to Acknowledge and Act Reasonably Promptly Upon Communications*

Snapsheet violated W.Va. Code §33-11-4(9)(b) and/or substantially encouraged and assisted State Farm in violating W.Va. Code §33-11-4(9)(b) by failing to act reasonably promptly

---

[is a] question [ ] of fact for the jury' that should not be determined as a matter of law by a trial court." Jones, 217 W.Va. at 115, 617 S.E.2d at 465 (citing syl. pt. 3, *Jackson*, 215 W.Va. at 637, 600 S.E.2d at 349)). Syl. Pt. 3, *Jackson v. State Farm Mut. Auto. Ins. Co.*, 215 W. Va. 634, 637, 600 S.E.2d 346, 349 (2004) ("Whether an insurer refused to pay a claim without conducting a reasonable investigation based on all available information under *W.Va.Code* § 33–11–4(9)(d) [2002], and whether liability is reasonably clear under *W.Va.Code* § 33–11–4(9)(f) [2002] ordinarily are questions of fact for the jury."
[10] **Exhibit 24,** SNAPSHEET001642.
[11] See **Exhibit 20,** Deposition of Sean Gergets, Snapsheet's 30(b)(6) witness at p. 202-206.
[12] **Exhibit 25,** SNAPSHEET000873.

upon the plaintiff's repeated communications expressing concerns about the inadequacy of photo-based estimates for structural damage. State Farm's frontline adjuster, acknowledged if it was her decision she would have sent someone there on behalf of State Farm to get the job done. Specifically, adjuster Kelly remarked: "If I had the capability to have someone who could do the estimate on-site? Yes.  I would have done that." *Id*. at 143:2-9. But the reality was that Snapsheet did not employ field adjusters or anyone capable of doing an in person inspection.  **Exhibit 20,** Deposition of Sean Gergets at p. 168:9-170:6.

Additionally, Snapsheet failed to act reasonably promptly upon information that the plaintiff was hospitalized and that she was suffering from cancer.  Rather than provide reasonable accommodations in light of her condition, Snapsheet demanded she provide photographs and when she did not immediately provide them, her claim was closed.  In fact, her claim was closed a total of fifteen (15) times by the defendants.  Defendant Snapsheet selectively ignored pertinent information and therefore failed to act reasonably promptly upon communications.

### §33-11-4(9)(c) - Failing to Adopt and Implement Reasonable Standards for Prompt Investigation

Snapsheet violated W.Va. Code §33-11-4(9)(c) and/or substantially encouraged and assisted State Farm in violating W.Va. Code §33-11-4(9)(c) by failing to implement reasonable standards for prompt investigation.  State Farm delegated its investigative duty to Snapsheet. **Exhibit 3 and 4,** SNAPSHEET-000074; SNAPSHEET-000089. This is incredibly problematic because "Snapsheet doesn't investigate claims."  **Exhibit 20,** Deposition of Sean Gergets at p. 110:25-112:10.  Not only does Snapsheet not investigate claims, it has no idea whether anyone has investigated the claim when it completes the estimate. *Id*. at p. 117:1-11. In fact, Snapsheet's training documents instruct estimators to not mention poor photo quality which demonstrates systematically unreasonable investigation standards.  **Exhibit 25,** SNAPSHEET000873.

Snapsheet also admits that even when some photos are blurry as long as some damage is visible in other photos, it will write an estimate. **Exhibit 25,** Deposition of Sean Gergets at p. 60:2-62:24. Even when Snapsheet is aware that its estimate may be incomplete and that potential damages exists which are not visible in the photos, Snapsheet withholds this information from the policyholder and only discloses this information to State Farm. **Exhibit 25,** Deposition of Sean Gergets at p. 89, line 10-24.

To be clear, "Snapsheet doesn't have any real understanding of how the West Virginia Unfair Trade Practices Act or insurance laws or regulations operate in the State of West Virginia beyond compliance measures that are identified on State Farm's guidelines." *Id*. at p. 112:19-113:2. For example, "Snapsheet doesn't know whether or not the duty to investigate is exclusively the duty of the insurance company or partially the duty of the policyholder."[13] *Id*. at p. 113:17-19.

### §33-11-4(9)(d) - Refusing to Pay Claims Without Conducting a Reasonable Investigation

Snapsheet substantially encouraged and/or assisted State Farm in violating W.Va. Code §33-11-4(9)(d) by refusing to pay claims without conducting a reasonable investigation. As documented hereinabove, Snapsheet and State Farm's facially absurd $185.50 estimate was less than the plaintiff's deductible operating as a claim denial. Thereafter, Snapsheet and State Farm closed the plaintiff's claim fifteen (15) times in an effort to avoid paying plaintiff's valid claim. When an actual in person inspection of the vehicle was performed it resulted in a $30,000 estimate.

State Farm delegated its investigative duty to Snapsheet without ensuring a thorough investigation was conducted based on all available information. **Exhibit 3 and 4,** SNAPSHEET-

---

[13] In *Stidd v. Erie Ins. Prop. & Cas. Co.*, Judge Bailey made it clear that a "real investigation" requires more than asking the policyholder to do the insurance company's investigation for it. No. 5:17-CV-56, 2018 WL 3028612, at *6 (N.D.W. Va. Apr. 25, 2018)(citing, *Bailey v. Bradford*, 12 F.Supp.3d 826, 842–43 (S.D. W.Va. 2014) (Johnston, J.) (policyholder "does not have a burden to conduct an investigation of his own claim ... Rather, that burden is on the insurer, and the policyholder need only make a reasonable demand within policy limits during the course of negotiations.")).

000074; SNAPSHEET-000089. Thereafter, Snapsheet and State Farm violated W.Va. Code §33-11-4(9)(d) by refusing to physically inspect the vehicle despite the insured's repeated requests and explicit safety concerns. **Exhibit 10,** STATE FARM_TERRY VANOVER 000367 and **Exhibit 11 and 12,** STATE FARM_TERRY VANOVER 000378-000388; SNAPSHEET-000076. Snapsheet relied solely on photographs when the damage was described by the policyholder as affecting the chassis and tongue assembly - structural components requiring physical inspection following a tear down. *Id*. These facts clearly demonstrate that Snapsheet and State Farm repeatedly refused to pay plaintiff's claim without conducting a reasonable investigation.

### *§33-11-4(9)(f) - Not Attempting in Good Faith to Effectuate Prompt, Fair and Equitable Settlements*

Snapsheet violated W.Va. Code §33-11-4(9)(f) and/or substantially encouraged and assisted Stat  Farm in violating W.Va. Code §33-11-4(9)(f) by not attempting to effectuate prompt, fair and equitable settlements of claims when liability has become reasonably clear. In the instant claim, the initial $185.50 settlement offer was not made in good faith.  To the contrary, it was a product as a result of a defective photo based estimate process designed to reduce claim payment to State Farm's policyholders by 15-20%. **Exhibit 24,** SNAPSHEET001642.  An in-person inspection paid for by the policyholder revealed that the loss was so extensive that the vehicle was ultimately deemed a total loss. **Exhibit 14,** STATE FARM_TERRY VANOVER 000362-000363. The information regarding the structural damage to the vehicle was known by State Farm since the first notice of loss, but was ignored because it was incongruent with a photo based appraisal. Despite having multiple opportunities to properly investigate, Snapsheet and State Farm did nothing to investigate the loss thereby delaying fair settlement for approximately a year until the

policyholder secured counsel and obtained and paid for an independent inspection and her own estimate of damages.

This claim is but one example of State Farm's business model that explicitly targets a 15-20% reduction in indemnity without any evidence that this reduction is justified based upon actual historical claim values.  It is now known that State Farm withholds evidence from its policyholders that latent damage may be discovered if the vehicle is torn-down at a shop when it makes its lowball settlement offers.  This problem is compounded by the training provided to State Farm's appraisal team that instructs estimators to not mention poor photo quality in their estimates.

### Violations of West Virginia Insurance Regulations (114CSR14)

#### 114CSR14-6.1 - Investigation of Claims

Snapsheet violated W.Va.C.S.R. §114-14-6.1 and/or substantially encouraged and assisted State Farm in violating W.Va.C.S.R. §114-14-6.1 by failing to "promptly conduct and diligently pursue a thorough, fair and objective investigation" by refusing to inspect the vehicle and ignoring the insured's legitimate concerns. The insurer "unreasonably delay[ed] resolution by persisting in seeking information not reasonably required" when it repeatedly demanded photos despite being told they would not be an adequate tool to access damages and an in-person inspection was required.

#### 114CSR14-6.2 - Establishment of Investigatory Procedures

Snapsheet violated W.Va.C.S.R. §114-14-6.2 and/or substantially encouraged and assisted State Farm in violating W.Va.C.S.R. §114-14-6.2 by failing to establish procedures to commence a proper investigation within fifteen working days of the notice of claim, instead placing the investigatory burden on the insured. Thereafter, Snapsheet and State Farm improperly closed the claim when the insured disclosed her cancer diagnosis and treatment, violating procedures for

15

proper claim investigation. The defendants closed the plaintiff's claim a total of fifteen (15) times in an effort to avoid paying the claim.

### 114CSR14-6.4 - Offers of Settlement

Snapsheet violated W. Va.C.S.R. §114–14–6.4 and/or substantially encouraged and assisted State Farm in violating W.Va.C.S.R. §114-14-6.4 by making a $185.50 estimate which was "unreasonably low" given the eventual $30,000 total loss determination. The company failed to estimate the claim for "amounts which are fair and reasonable" as required by regulation. This was not a result of aberrant behavior of rogue employees. To the contrary, the evidence demonstrates that this was business as usual for Snapsheet who designed a product aimed a reducing claim payment by undervaluing loss to the tune of 15-20%.

### 114CSR14-6.7 – Notice of Necessary Delay

W. Va.C.S.R. §114–14–6.7, which provides, as pertinent here, both that a prompt investigation is 30 days and that if an investigation remains incomplete, an insurer shall provide written notification of the delay to the claimant every 45 calendar days thereafter until the investigation is complete. In this case, Snapsheet and State Farm repeatedly closed the plaintiff's claim and neglected to send the mandatory delay letter every forty-five calendar days thereafter until the plaintiff secured counsel. **Exhibit 20**, Deposition of Justin Platt, State Farm's 30(b)(6) designee at p. 288:7-20. Therefore, Snapsheet violated W. Va.C.S.R. §114–14–6.7 and/or substantially encouraged and assisted State Farm in violating W.Va.C.S.R. §114-14-6.7

### Systemic Nature of State Farm's Violations

The material facts of this case demonstrate that there is a genuine dispute as to whether Defendant Snapsheet engaged in a pattern of unfair claim settlement practices rising to the level of a general business practice. The facts demonstrate the violations of W. Va. Code §§ 33–11–4(9)(a); §33–11–4(9)(b); §33-11-4(9)(c); §33-11-4(9)(d); §33-11-4(9)(f); and W.Va.C.S.R. §§114-

14-6.1; §114-14-6.2; §114–14–6.4; §114–14–6.7 were not isolated incidents but part of a systematic approach to estimating loss and assisting State Farm in the handling of plaintiff's claim.

Snapsheet's presentation to State Farm touted a 15-20% reduction in indemnity as the goal of doing business together. This is demonstrative evidence that undervaluation of claims is a deliberate strategy. Training documents explicitly instruct estimators not to mention poor photo quality, indicates a policy of disregarding evidence quality issues. The delegation arrangement between State Farm and Snapsheet is designed to reduce claim valuation by reducing investigation and therefore results in systematic claim undervaluation.

### *Snapsheet is State Farm's Third Party Administrator*

Snapsheet is State Farm's Third Party Administrator[14] ("TPA") and is referred to as such in State Farm's own internal claim diary. STATE FARM_TERRY VANOVER 000049. In *Shaffer v. Nat'l Health Ins. Co*., United States District Judge Irene M. Keeley **rejected** defendant's claim "that there is no private cause of action against third-party administrators." No. 1:17CV195, 2018 WL 1995525, at *3 (N.D.W. Va. Apr. 27, 2018). Therefore, the Court may impose liability against Snapsheet as "third-party administrator[15]" or as State Farm's agent.

### *Aiding and Abetting*

---

[14] In fact, State Farm did not employ adjusters who were able to write RV estimates, and therefore its adjusters were incapable of acting reasonably promptly upon communications. **Exhibit 13,** Deposition of Luanne Kelly at 142:8-10 ("State Farm does not have estimators for RVs. That's why we partner with Snapsheet.").

[15] In fact, Snapsheet CEO Brad Weisberg plainly acknowledges that for the appraisal business Snapsheet operates like an independent adjuster. *See* https://www.youtube.com/watch?v=O2ViAQ5zkTI at 42:56-43:01 ("Q: I mean in a way you guys are kind of independent adjusters. A: For a piece of our business yes for the appraisals business yes."). Snapsheet's controller, Tim Lackey, admits Snapsheet is a third-party administrator: "what we really are is we're a tech company we're focused on facilitating the claims administration process for our customers." https://www.youtube.com/watch?v=AAEBBAFgRHA Snapsheet publicly acknowledges, "We're here to help you get ready to harness the true power of data and automation to make better, faster claims handling decisions, reduce indemnity leakage, and increase profitability!" Connected Claims 2022. Connected Claims 2023.

Snapsheet knew State Farm had a contractual duty to provide full indemnity, but aimed to decrease claim payment by 15-20%. See **Exhibit 24,** Snapsheet Executive Summary at SNAPSHEET001642.

Snapsheet deliberately instructed its estimators to not mention poor photo quality in their estimates, refused to conduct an in-person inspection of the plaintiff's vehicle when it knew that a photo based appraisal would result in undervaluation. **Exhibit 25,** SNAPSHEET000873. Thereafter Snapsheet withheld from State Farm's policyholder that the photo based appraisal was improper forcing the plaintiff to secure counsel and pay out of pocket for her own appraisal. Therefore, Snapsheet aided and abetted State Farm in its tortious conduct and provided substantial assistance in the wrongful delay, undervaluation, denial and wrongful claims handling of Terry Vanover's claim for insurance benefits. *Shaffer v. Nat'l Health Ins. Co*., No. 1:17CV195, 2018 WL 1995525, at *6 (N.D.W. Va. Apr. 27, 2018)(citing, *Taylor*, No. 14–0961, 2015 WL 3875763, at *6).

*Conspiracy[16]*

Snapsheet conspired with State Farm to reduce first party claim payment ("indemnity") by 15-20%. SNAPSHEET001642. Snapsheet did not have access to State Farm's historical claim data and represented that it would reduce claim payment by 15-20% without any evidence or knowledge that State Farm was overpaying claims. See Deposition of Sean Gergets, Snapsheet's 30(b)(6) witness at p. 202-206. To the contrary Snapsheet admits that it's promise to reduce State

---

[16] "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Syl. Pt. 8, *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009).  "A civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who do not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Syl. Pt. 9, *Dunn*, 225 W.Va. 43, 689 S.E.2d 255. " 'The gist of a civil conspiracy is the damage resulting from commission of a wrong that injures another and not the conspiracy itself. Thus an actionable civil conspiracy must consist of wrongs that would have been actionable against the conspirators individually.' " *Dunn*, 225 W.Va. at 57, 689 S.E.2d at 269 (quoting *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762 (Tex. 1987)).

Farm claim payment by 15-20% was not based upon State Farm's historical claim data. *Id*. The scheme to reduce claim payment was achieved by undervaluing claims based upon photo based estimates when State Farm knew that photo based estimates were incapable of providing full and complete estimates.  In order to achieve its goal, the photo based estimators were trained not to mention poor photo quality and State Farm withheld information it had regarding potential latent damages. **Exhibit 25,** SNAPSHEET000873. The suggestion this fraudulent scheme was for a legitimate business purpose is unsupported by the evidence.

### *Joint Venture*

"Whether or not a joint venture exists is normally a question to be answered by the trier of fact." *Armor v. Lantz*, 207 W.Va. at 678, 535 S.E.2d at 743 (200). Indeed, the West Virginia Supreme Court has recognized that "'a plaintiff has a right to a jury trial upon the factual issues to determine whether a joint venture existed.'" *Bowers v. Wurzburg*, 207 W.Va. 28, 37, 528 S.E.2d 475, 484 (1999) (quoting *Lasry v. Lederman*, 147 Cal.App.2d 480, 305 P.2d 663 (1957)).  Plainly stated, "contributions of "property, money, efforts, skill [and] knowledge," raise a jury question regarding the existence of a joint venture. *Dailey v. Ayers Land Dev*., LLC, 241 W. Va. 404, 412, 825 S.E.2d 351, 359 (2019)(citing, *Sipple v. Starr*, 205 W.Va. 717, 725, 520 S.E.2d 884, 892 (1999) (further citation omitted)).

For reasons setforth hereinabove, plaintiff maintains that Snapsheet and State Farm have combined their property, money effects, skill and knowledge to assist one another in the adjustment of property loss claims.  State Farm is so heavily intertwined with Snapsheet it has invested its own money through a subsidiary[17] corporation (State Farm Ventures, LLC) in the Snapsheet. https://newsroom.statefarm.com/snapsheet/

---

[17] "State Farm Ventures, LLC is a wholly-owned subsidiary and registered trademark of State Farm Mutual Automobile Insurance Company." https://newsroom.statefarm.com/venture-capital-efforts/

### C. A triable question of fact exists regarding plaintiff's constructive fraud count.

Constructive fraud, also known as quasi fraud, exists where conduct that is not actually fraudulent is treated as fraud because it "contravene[s] a substantial public policy principle." *Stanley*, 285 S.E.2d at 683. It is "a breach of legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Id.*

Defendant's attempts to defeat plaintiff's constructive fraud claim is based upon the false assertion that there was no false representation of a material fact that mislead plaintiff upon which she relief to her detriment. In fact, Snapsheet materially misrepresenting to the plaintiff, that a photo-based appraisal was sufficient for properly evaluating structural RV damage despite the insured's express concerns about internal damage that would not be visible in photographs. **Exhibit 3 and 12,** SNAPSHEET-000074; SNAPSHEET-000076. Defendants knew that Snapsheet software would not provide a full and complete estimate of the damage to Ms. Vanover's RV but persisted in utilizing Snapsheet in an effort to reduce State Farm's claim payments [indemnity] and increase State Farm's corporate wealth. **Exhibit 24,** SNAPSHEET001642.

Plaintiff relied upon the defendant's misrepresentation when the photo based appraisal process was designed to systematically reduce claim payment and received a facially absurd $185.50 estimate and endured a year of delay and hardship. In *Artworks, LLC v. Hartford Cas. Ins. Co.,* the United States District Court for the Northern District of West Virginia rejected a comparable argument made by an independent adjuster who participated in the wrongful denial of the plaintiff's insurance claim No. 1:20-CV-65, 2020 WL 2754918 (N.D.W. Va. May 27, 2020).

The ugliest evidence of constructive fraud in this case is unquestionably training materials that instruct estimators to not mention poor photo quality in estimates. **Exhibit 25,**

SNAPSHEET000873.    Thereafter, Snapsheet deliberately withholds information about potential "latent damages" not visible in photographs but damage that estimators understand to exist.  These "latent damages" are not disclosed to State Farm's policyholders by Snapsheet and Snapsheet admits that this is its general business practice which is an additional material misrepresentation of fact.  **Exhibit 20,** Deposition of Sean Gergets at p. 89, line 10-24.

> Certain unfair settlement practices prohibited by the UTPA regarding acts of misrepresentation or deception can support a fraud claim. *See Wilt v. State Auto. Mut. Ins. Co*., 506 S.E.2d 608, 611–12 (W. Va. 1998) (noting that other conduct prohibited by the UTPA does not amount to a fraud claim because said unfair settlement practices are "geared more to the aspect of fostering claims processing in a timely manner to ensure fairness to the insured, rather than being aimed strictly at the elimination of conduct that is fraudulent in character."). The Northern District of West Virginia has previously recognized that a constructive fraud claim could be asserted based upon **"West Virginia's public policy prohibiting insurers from taking unfair advantage of policy holders."**

*Abraham Linc Corp. v. Spinnaker Ins. Co.*, No. 1:23-CV-98, 2024 WL 3433661, at *9 (N.D.W. Va. July 16, 2024)(emphasis added).

### D.  Insofar as the Court finds that Snapsheet is not an agent of State Farm, a triable question of fact exists regarding plaintiff's tortious interference cause of action.

Under West Virginia law, to establish a prima facie case of tortious interference with contract, a plaintiff must show the following: "(1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside of that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 403 (W. Va. 2008).

Assuming *arguendo* that defendant Snapsheet denies that it is an agent of State Farm, for reasons set forth hereinabove, it is liable for tortiously interfering with the parties' contract of insurance. See e.g., *Cavcon, Inc. v. Endress Hauser, Inc*., 557 F. Supp. 2d 706, 725 (S.D. W. Va. 2008); *Hanson v. Amerihome Mortg. Co., LLC*, No. 2:17-CV-03691, 2017 WL 6626328, at *7

(S.D.W. Va. Dec. 28, 2017).  State Farm and Shapsheet's business deal was designed to reduce State Farm's indemnity in first party claims by fifteen to twenty percent (15%-20%).  Snapsheet trained its estimators to not "mention poor photo quality" in the estimates it provided to State Farm and its policyholder.  Snapsheet was acutely aware that its photo based appraisal system would not provide a fair estimate of the damage to the plaintiff's vehicle and insisted that the plaintiff participate in the photo based appraisal process.  This conduct, *inter alia* demonstrates interference by a third party outside of the relationship or expectancy insofar as Snapsheet is not a party to the insurance contract.  See *Torbett v. Wheeling Dollar Savings & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983).

**WHEREFORE** based upon the foregoing the plaintiff requests that this Honorable Court DENY Bodyshopbids, Inc., d/b/a Snapsheet, Inc.'s Motion for Summary Judgment and award such further relief as the Court deems necessary and appropriate.


**TERRY VANOVER,**
**By Counsel,**

/s__*Stephen New*
Stephen P. New, Esq. (WV State Bar #7756)
**STEPHEN NEW & ASSOCIATES**
430 Harper Park Drive
Post Office Box 5516
Beckley, WV 25801
Telephone: (304) 250-6017

George N. Sidiropolis, Esq. (WV State Bar # 10391)
**FLANIGAN LEGAL, PLLC**
1140 Main Street, 4th Floor
Wheeling, WV 26003
Phone: (304) 233-7766
george@flaniganlegal.com

Kimball Jones, Esq. (pro hac vice)
**BIGHORN LAW**

22

3675 W. Cheyenne Ace., Suite 100
North Las Vegas, Nevada 89032

L. Lee Javins, Esq. (WV State Bar # 6613)
**BAILEY JAVINS & CARTER LC**
213 Hale Street
Charleston, West Virginia 25301
Telephone: (304) 345-0346
Facsimile: (304) 345-0375
ljavins@bjc4u.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **TERRY VANOVER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No.: 5:23-cv-00802** |
| | * | **Honorable Frank W. Volk** |
| **STATE FARM MUTUAL** | * | |
| **AUTOMOBILE INSURANCE** | * | |
| **COMPANY and** | * | |
| **BODYSHOPBIDS, INC.,** | * | |
| **d/b/a SNAPSHEET, INC.,** | * | |
| | * | |
| **Defendants.** | * | |

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on the 28th day of April, 2025, the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO BODYSHOPBIDS, INC., D/B/A SNAPSHEET, INC.'S MOTION FOR SUMMARY JUDGMENT** was electronically filed using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| Melvin F. O'Brien, Esq. | Jill Cranston Rice |
| Michelle D. Baldwin, Esq. | Alex M. Greenberg, Esq. |
| Dickie, McCamey & Chilcote, L.C. | Lauren E. Motes, Esq. |
| 2001 Main Street, Suite 501 | Disnmore & Shohl, LLP |
| Wheeling, WV 26003 | 215 Don Knotts Boulevard, Suite 310 |
| *Counsel for Bodyshopbids, Inc. d/b/a* | Morgantown, WV 26501 |
| *Snapsheet, Inc.* | *Counsel for State Farm Mutual* |
| | *Automobile Insurance Company* |

/s_ *Stephen New*
Stephen P. New, Esq. (WV State Bar #7756)
**STEPHEN NEW & ASSOCIATES**
430 Harper Park Drive
Post Office Box 5516
Beckley, WV 25801
Telephone: (304) 250-6017

24

George N. Sidiropolis, Esq. (WV State Bar # 10391)
**FLANIGAN LEGAL, PLLC**
1140 Main Street, 4th Floor
Wheeling, WV 26003
Phone: (304) 233-7766
george@flaniganlegal.com

Kimball Jones, Esq. (pro hac vice)
**BIGHORN LAW**
3675 W. Cheyenne Ave., Suite 100
North Las Vegas, Nevada 89032


L. Lee Javins, Esq. (WV State Bar # 6613)
**BAILEY JAVINS & CARTER LC**
213 Hale Street
Charleston, West Virginia 25301
Telephone: (304) 345-0346
Facsimile: (304) 345-0375
ljavins@bjc4u.com