IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**TERRY VANOVER,**

      **Plaintiff,**

v.                                                    **Civil Action No.: 5:23-cv-00802**

**STATE FARM MUTUAL AUTOMOBILE**        **Honorable Frank W. Volk**
**INSURANCE COMPANY, and**
**BODYSHOPBIDS, INC., d/b/a**
**SNAPSHEET, INC.,**

      **Defendants.**

**DEFENDANT BODYSHOPBIDS, INC., D/B/A SNAPSHEET, INC.'S**
**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO AMEND AND CERTIFY CLASS**

NOW COMES the Defendant Bodyshopbids, Inc., d/b/a Snapsheet, Inc. ("Snapsheet"), by counsel, and hereby provides its Memorandum in Opposition to the Plaintiff's Motion to Amend Complaint to Seek Class Certification and To Certify Class (doc. 166), filed on April 24, 2025.

**I.    Introduction**

This case was filed on December 20, 2023 (*see* doc. 1), and arises out of a claim submitted by Plaintiff to State Farm Mutual Automobile Insurance Company ("State Farm"). Plaintiff submitted a property damage claim to State Farm relating to damage sustained to her 2014 Keystone Mountaineer RV on or about October 1, 2022. After a lengthy period of communications and investigation, State Farm extended a total loss offer for Plaintiff's RV damage on September 25, 2023. *See* doc. 161-4, p. 15-16 (bates no. STATE FARM_TERRY VANOVER 000292-293). Rather than respond to the offer, Plaintiff's counsel filed this lawsuit, then later accepted the offer on February 23, 2024. *See* doc. 57, para. 146.

In response to the original Complaint, Snapsheet filed a Motion to Dismiss (doc. 17) and

State Farm filed a Motion to Strike Plaintiff's Complaint or for More Definite Statement (doc. 13). Defendants filed a Joint Motion to Stay Discovery (doc. 35) pending the Court's decision on Defendants pending motions. On August 6, 2024, this Court noted that some of the challenges raised in the Defendants' motions "appear to be meritorious," and as such directed Plaintiff to file an Amended Complaint. *See* doc. 56, p. 1. The Court further stayed this action pending the Defendants' responses thereto. *See* doc. 56, p. 2.

In response to the Amended Complaint (doc. 57), filed on August 16, 2024, both Defendants filed Motions to Dismiss (docs. 60, 62) on August 30, 2024. Pursuant to the Court's instruction, the parties conducted a Rule 26(f) conference and submitted their Report of Planning Meeting (doc. 71) on October 15, 2024. The following day, this Court entered its scheduling order (doc. 72) setting the operative deadlines in this case.

To date, the parties have engaged in substantial written discovery and taken a total of twelve (12) depositions, and the Defendants have filed Motions for Summary Judgment, which now are fully briefed. Rather than timely respond to the Defendants' Motions for Summary Judgment, Plaintiff instead filed a Motion to Amend and to Certify Class (doc. 166), which, for the reasons set forth below, should be denied.

**II.** **Legal Discussion**

    **A.** **Plaintiff's Motion to Amend is untimely, prejudicial, and futile, and should be denied.**

If a motion seeking leave to amend a complaint is "'filed after the deadline established in the scheduling order, [it] must satisfy the tests of both Rule 16(b) and Rule 15(a)' in order to be granted." *Issa v. Wells Fargo, N.A.*, 2013 U.S. Dist. LEXIS 66064 at *4 (S.D. W.Va. 2013). *See also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). In this case, this Court's Scheduling Order (doc. 72) established a deadline for the amendment of parties' pleadings of

December 3, 2024. Plaintiff's Motion to Amend (doc. 166) was filed on April 24, 2025, nearly five (5) months after the deadline.

### 1. Plaintiff's Motion should be denied in accordance with Rule 16 because she cannot demonstrate good cause.

Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, "[a] schedule may be modified only for good cause and with the judge's consent." As recognized by the Plaintiff,

> "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel Cnty.*, 182 F. App'x 156, 162 (4th Cir. 2006) (citing *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631-32 (D. Md. 2003)); *see also Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) ("'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite [*4] the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or the party's attorney) has not acted diligently in compliance with the schedule.'" (alterations in original) (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure Civ. 3d* § 1522.2 (3d Ed. 2010))); *Marcum*, 163 F.R.D. at 255 ("[T]he touchstone of 'good cause' under Rule 16(b) is diligence.").

*Blevins v. Nationwide Gen. Ins. Co.*, 2018 U.S. Dist. LEXIS 160909, at *3-4 (S.D. W. Va. Sep. 20, 2018). Further, "Rule 16(b) provides a higher hurdle for movants. . . . ." *Issa* at *5. Plaintiff has not acted with diligence, and her motion to amend should be denied.

Plaintiff's primary excuse for the lack of diligence in requesting amendment is the alleged "concealment of evidence, and failure to timely disclose evidence" on the part of the Defendants. Plaintiff's Motion (doc. 166), p. 7. The allegation that evidence was concealed is wholly unsupported. While Plaintiff perhaps did not receive information as quickly as desired, the Defendants collectively have produced over 22,000 pages of documents in response to Plaintiff's discovery requests. This hardly can be characterized as the "concealment" of evidence.

Second, Plaintiff's contention that she "had no access to the information regarding State Farm's ubiquitous use of Snapsheet" (doc. 166, p. 5) is belied by the allegations of Plaintiff's

3

original Complaint (doc. 1), filed on December 20, 2023. Plaintiff's original allegations in this action consist of the following:

- "At all relevant times, Snapsheet provided a service designed to reduce losses ("claim payment") for insurance companies via its claims software." Doc. 1, p. 1, para. 3.

- Defendants "[c]ommitt[ed] tortious acts within this state by engaging in bad faith provision of insurance services in West Virginia via claims-management software designed to artificially reduce claim values[.]' Doc. 1, p. 2, para. 5(a).

- "Sometime prior to October 2022, State Farm began utilizing claims-management software and services provided by Snapsheet. Again, State Farm was also an active investor in Snapsheet through its investment subsidiary, State Farm Ventures, LLC." Doc. 1, p. 12, para. 39.

- "Today, Snapsheet routinely acknowledges that its claim adjustment software is aimed at reducing the amount of money insurance companies pay to first party claimants by indicating that it will "reduce loss!" and claiming a "20% reduction in claims leakage." Doc. 1, p. 12, para. 45.

- "Specifically, State Farm and Snapsheet conspired to unlawfully reduce first party claim payment in violation of West Virginia insurance law to increase State Farm's corporate profit." Doc. 1, p. 25, para. 101.

In response to the original Complaint, Snapsheet filed a Motion to Dismiss (doc. 17) on March 14, 2024, which included as an exhibit the Work Order between State Farm and Snapsheet. See doc. 17-1. The Work Order describes the services provided by Snapsheet to State Farm. Thus, Plaintiff's contention that she somehow was deprived of information in this regard is wholly

without merit.

After being directed by the Court to file an Amended Complaint (*see* doc. 56, Order of August 6, 2024), Plaintiff did so and incorporated more detailed allegations, including the following:

- "State Farm has employed the use of Artificial Intelligence ("AI"), including but not limited to, defendant Snapsheet's estimating software. State Farm uses Snapsheet's AI estimation program to reduce claim payment and increase corporate revenue." Doc. 57, p. 17, para. 66.[1]

- Defendants violated W. Va. Code § 33-11-4(9)(f) by not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear insofar as State Farm knew, based upon historical data, that Snapsheet was producing estimates that were unreasonably low in an effort to reduce severity, but nevertheless deliberately utilized Snapsheet to value first party auto property claims to reduce claim payment and increase State Farm's corporate wealth." Doc. 57, p. 41, para. 201.

- "Defendants, by and through their agents, servants, officers, adjusters, and employees committed violations of the West Virginia Unfair Claims Settlement Practices Act and West Virginia Insurance Regulations with such frequency as to indicate a general business practice." Doc. 57, p. 42, para. 204.

Indeed, it is fair to assume that Plaintiff's counsel believed there was a good faith basis that "the factual contentions have evidentiary support" consistent with Rule 11(b) of the Federal Rules of

---

[1] Since the Amended Complaint (doc. 57) was filed, discovery indisputably has demonstrated that Plaintiff's allegations regarding Snapsheet's alleged use of AI in services provided to State Farm are false.

5

Civil Procedure, or they would not have made such allegations in their complaints.

With respect to the contention that "the average amount of projected theft from State Farm policyholders was first disclosed by defendant Snapsheet on March 18, 2025," (doc. 166, p. 5)[2], Plaintiff has made very similar allegations since the initial filing of this action, as set forth in the original Complaint (*see* doc. 1, p. 12, para. 45).  Plaintiff notably contradicts these allegations in the proposed Second Amended Complaint, in which she alleges that she "learned that Defendant appears to have enlisted a nationwide business practice of improperly 'reducing indemnity'" on February 17, 2025.  Doc. 166-3, p. 34, para. 167.

Moreover, during the deposition of Doug Evans, taken on March 7, 2025, Plaintiff introduced an exhibit consisting of a printout from Snapsheet's website dated December 10, 2023, which refers to a "20% reduction in claims leakage."  Exhibit 1.  Thus, it appears that Plaintiff knew about this information even <u>before her original Complaint was filed</u>[3], and for well over a year prior to seeking amendment, yet still argues in her Motion that she was unaware of it.  To the extent that Plaintiff might attempt to argue that the additional evidence produced by the Defendants in March 2025 was required to prove her claims, the Southern District previously has addressed a similar situation.  In *Blevins v. Nationwide Gen. Ins. Co.*, the Court stated:

> Blevins argues that her motion was not unduly delayed because Nationwide is withholding the evidence that would permit her to prove her case. (See ECF No. 89.) However, the Court does not find this argument persuasive. The pleading standard is much less stringent than the standard to prove a claim. Thus, as long as there was a good faith legal basis to do so, Blevins could have alleged a formal fraud claim without yet having all of the evidence necessary to prove that claim.

---

[2]  Of course, there is no evidence that either Defendant intended, desired, or even projected any theft from State Farm policyholders, and this statement is purely self-serving and defamatory.  To the contrary, the depositions taken by Plaintiff have demonstrated that the common and primary goal of all damage estimates was one of accuracy.

[3]  The original Complaint (doc. 1) in this action was filed on December 20, 2023.

6

*Blevins* at *8-9. There is no doubt that Plaintiff herein was fully aware if the information needed to raise the issue of a class action well prior to the expiration of the discovery deadline, the summary judgment deadline, and April 24, 2025, the date she filed her Motion to Amend. Plaintiff's lack of diligence necessitates denial of her motion.

Plaintiff's proposed Second Amended Complaint contains another example of Plaintiff's misstatement of the facts, in which it is falsely alleged that "Plaintiff first learned" that Snapsheet uses the document produced as SNAPSHEET000873 "in the ordinary course of business to train its new hires" during a "deposition on April 1, 2025." Doc. 166-3, p. 34, para. 168. In reality, Plaintiff had this document well before April 1. Plaintiff's counsel extensively examined Doug Evans, Snapsheet's Senior Director Appraisal Operations, about it during his deposition taken on March 7, 2025. *See* Exhibit 2, Evans Depo., p. 168, ll. 3-17.[4]

One other misrepresentation contained in Plaintiff's motion bears mention. Plaintiff argues that "the Defendants neglected to so much as verify their answers [to discovery] until mid-February, 2025. This necessitated that Plaintiff file <u>five</u> (5) motions to compel. See e.g., ECF 52, 53, 88, 89, and 90." Doc. 166, p. 7 (footnote omitted).[5] However, the court record clearly establishes that Plaintiff only filed <u>four</u> motions to compel, that one of those motions was only in relation to a corporate representative deposition, and that the absence of verifications was cured in accordance with the Order entered by Magistrate Judge Aboulhosn on January 24, 2025 (doc. 97).

To the best of the undersigned's knowledge, Plaintiff's counsel first raised the possibility

---

[4] The questions on page 168 of Mr. Evans' deposition relate to Deposition Exhibit 10, which spans pages SNAPSHEET000871 though SNAPSHEET000874.

[5] ECF 52 is Plaintiff's Memorandum in Support of her Motion to Compel, filed as ECF 53; ECF 88 is Plaintiff's Motion to Compel Rule 30(b)(6) Deposition of State Farm; ECF 89 is Plaintiff's Motion to Compel Full and Complete Answers from Snapsheet; and ECF 90 is Plaintiff's Second Motion to Compel Full and Complete Answers from State Farm.

of seeking an extension of the Court's Scheduling Order on or about December 17, 2024. Counsel for Snapsheet did not participate in that discussion, but learned about it from State Farm's counsel in an email sent later that day. *See* doc. 93-3. The undersigned then received a communication from Plaintiff's counsel concerning the extension of deadlines on January 13, 2025, when Plaintiff's counsel forwarded a proposed motion. *See* Exhibit 3, January 13, 2025 email from G. Sidiropolis, with attachments. The following day, State Farm objected to the extension of Court deadlines such as the trial date. *See* Exhibit 4, January 14, 2025 email from J. Rice. Thereafter, all counsel conducted a conference call on January 15, 2025. At that time, Plaintiff's counsel requested the agreement of the Defendants to an extension of the deadline to amend pleadings. Plaintiff's counsel would not elaborate on the reason(s) for that request or the scope of the amendment(s) that were contemplated. Accordingly, Defendants declined to agree to that request, and Plaintiff never submitted any request to the Court to further amend the complaint until April 24, 2025.[6]

Plaintiff's motion does not address these earlier discussions, but it is apparent that Plaintiff wanted to amend the complaint as early as January 2025, yet chose to delay submitting that request to the Court until late April. There is no question that the Plaintiff did not act diligently in seeking to amend her complaint once more, or in attempting to assert a class action in this matter. As such, the Plaintiff cannot demonstrate good cause, and Plaintiff's motion should be denied pursuant to Rule 16 of the Federal Rules of Civil Procedure.

> **2.  Plaintiff's Motion should be denied because it is prejudicial to Snapsheet and the amendment is futile.**

If this Court determines that Plaintiff has demonstrated good cause for the untimely request

---

[6] These issues also were discussed in response to Plaintiff's Motion to Compel Discovery From Snapsheet (doc. 89). *See* Snapsheet's Response to Plaintiff's Motion to Compel (doc. 93), pp. 1-6. *See also* doc. 93-10.

for leave to file a second amended complaint, it then must consider Plaintiff's motion under Rule 15(a)(2) of the Federal Rules of Civil Procedure. That rule states:

> (2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Rule 15(a)(2), F.R.C.P. As discussed above, Plaintiff knew *at least* by January 15, 2025, that both Defendants would object to amendment and that leave of Court would be required. As such, Plaintiff filed the instant motion. It is well-settled that "[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Blevins* at *9, quoting *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

First and foremost, the requested amendment is highly prejudicial to the Defendants. The Defendants worked extremely diligently to complete discovery, even agreeing to extend the discovery deadline to April 1. *See* doc. 91. In so doing, Defendants voluntarily limited the time to submit dispositive motions to a shortened period of six (6) days, as the Court's Scheduling Order (doc. 72) established that deadline as April 7, 2025. Defendants timely filed their dispositive motions on that date. Plaintiffs Motion to Amend, filed even after the deadline for Plaintiff's responses to dispositive motions, effectively precludes Defendants from seeking summary judgment, or even conducting any discovery, on the purported class claims. This Honorable Court has made it abundantly clear in this case that the parties "are prohibited from conducting further discovery on or after" the dispositive motions deadline, and further recognized, "[i]t is imperative for the evidentiary record to be fully developed prior to the adjudication of Rule 56 motions." February 18, 2025 Order (doc. 108). The Defendants complied with the Court's directive. In light of the significant prejudice to the Defendants, the Motion to Amend should be denied. *See Blevins*

9

at *9 (finding that the requested amendment would be prejudicial to the Defendant because discovery has closed, amendment would necessitate reopening discovery, and the trial would have to be continued, which would prejudice the Defendant "as it has prepared for trial as scheduled in the Scheduling Order").

Second, the requested amendment would be futile. "Where amendment would be futile, a motion to amend may be denied—even if the 'good cause' requirement is not imposed." *Atchison v. Novartis Pharms. Corp.*, 2012 U.S. Dist. LEXIS 37697 at *4 (S.D. W.Va. 2012), quoting *Igen Int'l Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 311 (4th Cir. 2003), and citing *Steinberg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008), " (denying amendment as futile where proposed amended complaint would not have survived summary judgment). As set forth below, Plaintiff cannot fulfill the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure. She also cannot satisfy the requirements of Rule 23(b)(3). Therefore, in light of the futility of the sought amendment, the Plaintiff's Motion should be denied.

      **B.**    <u>**Class Certification should be denied**</u>.

Plaintiff prematurely seeks class certification in spite of having no such formally asserted claim in an operative complaint. Accordingly, Snapsheet will respond to Plaintiff's hypothetical request based upon the assumption that the proposed Second Amended Complaint (doc. 166-3) is permitted. In the event that the Court does permit the Plaintiff to amend, Snapsheet requests that the Court allow the opportunity for further briefing on the question of class certification after appropriate discovery is conducted.

Plaintiff seeks class certification solely pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. *See* doc. 166, p. 13. However, before consideration of that rule, Plaintiff first must satisfy the prerequisites to asserting such a claim in accordance with Rule 23(a). That portion

of the rule states:

>    (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>    (1) the class is so numerous that joinder of all members is impracticable;
>    (2) there are questions of law or fact common to the class;
>    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>    (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), F.R.C.P. "The Rule 23(a) requirements of numerosity, commonality, typicality and adequacy of representation must be met by specific identification of law or fact questions in common between Plaintiff and the putative class members." *Burdette v. FMC Corp.*, 566 F. Supp. 808, 812-813 (S.D. W.Va. 1983). Plaintiff cannot satisfy these prerequisites, and therefore the Motion should be denied without further inquiry.

The party seeking certification "must do more than plead compliance" with the requirements of Rule 23. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). "Rather, the party must present evidence that the putative class complies with Rule 23." *Id.* (citations omitted). "Although Rule 23 does not give district courts a 'license to engage in free-ranging merits inquiries at the certification stage,' a court should consider merits questions to the extent 'that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Id.* at 357-358 (citations omitted). Further, the Plaintiff has the "burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *Id.* at 358.

In the Fourth Circuit, the Court has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *Id.* The court may not certify a class unless it "can readily identify the class members in reference to objective criteria," and if doing so requires "extensive and individualized fact-finding or 'mini-

11

trials,' then a class action is inappropriate." *Id.* (citations omitted).

Plaintiff has proposed to define the class as follows: "All persons who were customers of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and had estimates produced by SNAPSHEET, INC., on or after April 1, 2019, and going forward until the entry of judgment in this action." Plaintiff's Motion (doc. 166), p. 3. The obvious problem here is that merely having an estimate performed by Snapsheet in no way bestows a civil claim upon a policyholder. The estimate would have to be tortious in some way, and there is no way to ascertain the propriety of each member's estimate without having an extensive inquiry, or "mini-trial," in order to make this determination. Thus, Plaintiff's proposed class is not readily identifiable and certification should be rejected.

### 1. Plaintiff has not satisfied the requirements of commonality and typicality.[7]

In the event the Court determines that it should proceed with further consideration, the first question that should be addressed is whether there are common questions of law or fact. Plaintiff contends that this commonality requirement is satisfied, and defines the "common question of fact and law [as] whether Snapsheet improperly devalued estimates for damage." Doc. 166, p. 11. What is most shocking—and perplexing—about this argument is that Plaintiff herein "admits that the amount of $33,346.76 [the amount of Snapsheet's supplemental estimate] is **full and fair compensation** for her total loss of her insured Recreational Vehicle." Doc. 163-6 at No. 35 (emphasis added). Plaintiff also admits that she received a check from State Farm in this exact amount. *See id.* at No. 34. Even if Snapsheet did endeavor to assist State Farm in reducing

---

[7] While Snapsheet in no way concedes that Plaintiff has satisfied the numerosity and adequacy requirements, it is not necessary for the Court to address them in light of the blatant failure of Plaintiff to satisfy the prerequisites of commonality and typicality.

12

indemnity payments by 20% (which it did not do)[8], Plaintiff admits that she was not underpaid, and therefore Plaintiff herself does not even qualify as a member of the class she seeks to certify. With Plaintiff having been fully compensated for the damage to her RV, there is no common question of either fact or law in the purported class, and Plaintiff Vanover's claims are not typical of the proposed class.

Even a cursory consideration of other issues present in this case further supports the conclusion that no commonality or typicality are present in the proposed class. The most obvious deficiency is the lack of common questions of law. While Plaintiff's individual claims are brought pursuant to West Virginia common law and the West Virginia Uniform Trade Practices Act (UTPA), she proposes to define a nationwide class, which potentially would include State Farm policyholders from numerous states. Certainly members who are not residents of the State of West Virginia and had no insurance claims made in this State would not be able to bring civil actions under West Virginia law. Plaintiff expends no effort—in either her proposed Second Amended Complaint or her Motion—to indicate whether the law in other states would even permit similar claims to be asserted, but rather only asserts her own claims under West Virginia law. In summary, Plaintiff cannot represent a nationwide class due to wide variations in state law.

Plaintiff also gives no consideration to the question of whether the class members' estimates were for total losses (such as Plaintiff Vanover) or for repairs, and whether State Farm paid the policyholder or paid a repair facility directly. For instance, if payment was made to the repair shop directly and the policyholder's vehicle was thoroughly repaired, the policyholder would have been made whole and no claim could exist. Plaintiff also purports to include

---

[8] Plaintiff's Motion speciously asserts the existence of "Defendants' own admission that 'leakage' was reduced by approximately 20% and that individualized assessment of property damage was nearly non-existent." Doc. 166, pp. 11-12. This statement is completely false, and Plaintiff has not cited to a shred of evidence to support it, as there is none.

individuals whose estimates were prepared on or after April 1, 2019, yet fails to recognize that many of the potential claims would be barred by the statute of limitations, particularly in West Virginia, where claims under the UTPA must be brought within one year. *See Wilt v. State Auto. Mutual Ins. Co.*, 203 W.Va. 165, 506 S.E.2d 608, syl. pt. 1 (1998).

It is abundantly clear that the proposed class does not contain common issues of law or fact, and the Plaintiff's claims are not typical of the proposed defined class. Therefore, Plaintiff's request to certify a class should be denied based upon Plaintiff's failure to satisfy Rule 23(a)(2) and (3).

### 2. Plaintiff has not satisfied the requirements of Rule 23(b)(3) and her motion for certification should be denied.

If, and only if, Plaintiff is able to satisfy the prerequisites of Rule 23(a), the Court's inquiry may proceed to Rule 23(b). Plaintiff only asserts that certification should be granted pursuant to Rule 23(b)(3), which states:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: . . .
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

As discussed above, the questions of law and fact vary among the potential class members so widely that it simply is not feasible to proceed with the class requested by Plaintiff. There is no evidence of the scope of the various States' laws that would apply to the claims of the purported class, nor whether their claims are barred by the applicable statutes of limitations. Many, if not

most, of the proposed class members would have no claim under West Virginia law.

Moreover, Plaintiff herself is not even a member of the proposed class, inasmuch as she admittedly received full and fair compensation for her RV claim. Clearly Plaintiff's claim was not undervalued at all, much less by 20%, so she simply has no qualifications or ability to serve as a class representative. There is no question that Plaintiff cannot satisfy the rigorous requirements of Rule 23, and her motion should be denied.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, the Defendant Bodyshopbids, Inc., d/b/a Snapsheet, Inc. respectfully requests that the Court DENY Plaintiff's Motion to Amend Complaint to Certify Class (doc. 166), and that the Court award such other relief in this Defendant's favor to which it may be justly entitled.

Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE, L.C.

By:   */s/ Michelle D. Baldwin*
      Melvin F. O'Brien, Esq. (WV #6797)
      Michelle D. Baldwin, Esq. (WV #8058)
      2001 Main Street, Suite 501
      Wheeling, WV  26003
      Phone: 304-233-1022
      Fax: 888-811-7144
      E-mail:  mobrien@dmclaw.com
               mbaldwin@dmclaw.com

*Counsel for Defendant Bodyshopbids, Inc. d/b/a Snapsheet, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**TERRY VANOVER,**

      **Plaintiff,**

**v.**                                                      **Civil Action No.: 5:23-cv-00802**
                                                           **Honorable Frank W. Volk**

**STATE FARM MUTUAL**
**AUTOMOBILE INSURANCE**
**COMPANY and**
**BODYSHOPBIDS, INC.,**
**d/b/a SNAPSHEET, INC.,**

      **Defendants.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing *Defendant Bodyshopbids, Inc., d/b/a Snapsheet, Inc.'s Memorandum in Opposition to Plaintiff's Motion to Amend and to Certify Class*, was electronically filed on the 8th day of May, 2025, via the CM/ECF system, which will provide electronic notice to the following counsel of record:

| | |
|---|---|
| L. Lee Javins, II, Esq.<br>BAILEY JAVINS & CARTER LC<br>213 Hale Street<br>Charleston, West Virginia 25301<br>ljavins@bjc4u.com<br>*Counsel for Plaintiff* | George N. Sidiropolis, Esq.<br>FLANIGAN LEGAL, PLLC<br>1140 Main Street, 4th Floor<br>Wheeling, WV 26003<br>george@flaniganlegal.com<br>*Counsel for Plaintiff* |
| Kimball Jones, Esq.<br>3675 W. Cheyenne Ave., Suite 100<br>N. Las Vegas, NV 89032<br>kimball@bighornlaw.com<br>*Counsel for Plaintiff* | Stephen N. New, Esq.<br>Stephen New & Associates<br>420 Harper Park Drive<br>P.O. Box 5516<br>Beckley, WV 25801<br>*Counsel for Plaintiff* |

Jill Cranston Rice, Esq.
Alex M. Greenberg, Esq.
Lauren E. Motes, Esq.
DINSMORE & SHOHL LLP
215 Don Knotts Boulevard, Suite 310
Morgantown, WV 26501
*Counsel for State Farm Mutual*
*Automobile Insurance Company*


                DICKIE, McCAMEY & CHILCOTE, L.C.

                By:    */s/ Michelle D. Baldwin*
                       Michelle D. Baldwin, Esq. (WV #8058)
                       2001 Main Street, Suite 501
                       Wheeling, WV  26003
                       Phone: 304-233-1022
                       Fax: 888-811-7144
                       E-mail:  mbaldwin@dmclaw.com

*Counsel for Defendant Bodyshopbids, Inc., d/b/a Snapsheet, Inc.*